[Cite as *State v. Wieser*, 2018-Ohio-3619.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  1-18-15

      v.

GAIL M. WIESER,                    O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Lima Municipal Court

Trial Court No. 17TRC09050-A & B

Judgments Affirmed

Date of Decision:   September 10, 2018


APPEARANCES:

    *Michael J. Short*  for Appellant

    *John R. Payne* for Appellee

**SHAW, J.**

{¶1} Defendant-Appellant, Gail M. Wieser, appeals the March 1, 2018 judgments of the Lima Municipal Court finding her guilty of OVI and failure to maintain control of her vehicle. On appeal, Wieser claims that her OVI conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Wieser also asserts that she was denied her Constitutional right to be tried by an impartial, unprejudiced, and unbiased tribunal when the trial court made a procedural error at trial.

*Procedural History*

{¶2} On August 3, 2017, a complaint was filed against Wieser in Lima Municipal Court alleging that she committed the offenses of OVI, in violation of R.C. 4511.19(A)(1)(a), and failure to maintain control of her vehicle, in violation of R.C. 4511.202. The following day, Wieser appeared in court and entered pleas of not guilty.

{¶3} On February 27, 2018, a bench trial was held on the matter, where the following testimony was elicited. Police Chief Redick of the American Township Police Department testified that he received a dispatch on August 2, 2017, at approximately 9:56 a.m., regarding a motor vehicle accident at the intersection of Eastown Road and Market Street in Lima, Ohio. He was further advised by dispatch of a possible injury and that a hit skip may have occurred. Upon his

arrival at the scene, Chief Redick observed a vehicle at the southwest corner of the intersection and Wieser sitting on the curb. Wieser informed Chief Redick that she was driving the vehicle when she entered the intersection on a green light and was struck by another vehicle travelling southbound on Eastown Road. Wieser claimed the other vehicle did not stop after the collision.

{¶4} Chief Redick investigated further and found that the tire marks on the road left from Wieser's vehicle and the lack of any debris indicated that Wieser's version of the events was not accurate. Upon interacting with her, Chief Redick also noticed that Wieser's eyes were "pinpoint" and her speech was slow and had a slur. (Doc. No. 10 at 6). Wieser was transported to the hospital to be examined for injuries.

{¶5} Officer Sarchet of the American Township Police Department also responded to the scene of the accident. He testified that he completed a "Traffic Crash Report," which was admitted as the prosecution's Exhibit A at trial. Officer Sarchet concluded that:

> **[Wieser's vehicle] was eastbound in the 2900 Block of W. Market St. when it went left of center and up and over the curb where it struck a dirt mound causing it to go airborne. As it was airborne, it struck a tree in the front yard of 2810 W. Market St. approximately six and a half [feet] off of the ground. As [Wieser's vehicle] came back to the ground, it accelerated rapidly, continuing eastbound crossing the driveway at 2810 then veered sharply to the right and came to rest on the southwest corner of W. Market St. and S. Eastown Rd. over the curb.**

(Ex. A).[1]   In addition to his narrative in the Traffic Crash Report, Officer Sarchet also testified that Wieser hit a stop sign.  Officer Sarchet interacted with Wieser at the scene and observed her speech was slurred and her movements were slow.  Officer Sarchet testified that he asked Wieser if she was on any medication.  Officer Sarchet further testified Wieser informed him of the following: "she told me she was on Ambien, told me she, told me she was on a [sic] anti-depressant and a sleep medication."  (Doc. No. 10 at 10).

{¶6} Sergeant Dyer of the Ohio State Highway Patrol was dispatched to the hospital where Wieser was transported after the accident.  Sergeant Dyer testified that Wieser's pupils were slightly dilated, even though the room was well lit.  He also observed Wieser's neck and head movements were lethargic, and her speech was slow and slurred consistent with being "medicated."  (Doc. No. 10 at 12).  Sergeant Dyer further testified that after being advised that she was going to be charged with an OVI, Wieser submitted to a urine test.  Sergeant Dyer testified that he electronically received the notarized "Report of Analysis Urine Drug Toxicology" from the Ohio Department of Health.  The results of the urine test were admitted as prosecution's Exhibit B at trial, and indicated that Wieser's urine tested positive for Zolpidem (also known as Ambien) and Butalbital.  Sergeant

---

[1] Notably, Officer Sarchet's conclusion in the Traffic Crash Report was consistent with Chief Redick's testimony regarding how the accident occurred.

Dyer testified that Ambien is "a sleep medication" and Butalbital is "used for pain, like headaches." (Id. at 15).

{¶7} At the close of the prosecution's case, Wieser's trial counsel moved for a Crim.R. 29 motion for acquittal on the basis that the prosecution failed to prove that either medication listed in the lab report were "drugs of abuse" and failed to present any evidence that the substances found in her system caused her to be impaired while driving. The trial court took a short recess to consider the issues raised by defense counsel. Upon reconvening the trial, the trial court found Wieser guilty on both counts. Defense counsel pointed out that a finding of guilt was premature given the fact that the defense had yet to present its case or rest on the prosecution's evidence. The trial court apologized, overruled the motion, and permitted defense counsel to proceed. No further evidence was presented by the defense, however, the Crim.R. 29 was renewed prior to the defense resting its case.

{¶8} The trial court overruled the renewed Crim.R. 29 motion and found Wieser guilty of both OVI and failure to maintain control of her vehicle. The trial court proceeded with sentencing. For her conviction for OVI (17TRC0950-A), the trial court sentenced Wieser to five days in jail, all suspended upon her compliance with completing a Driver Intervention Program within 180 days. Wieser's driver's license was also suspended for 365 days and she was assessed six points on her

license, in addition to being fined $500.00, plus court costs. For her failure to maintain reasonable control of her vehicle (17TRC0950-B), Wieser was fined $150.00, plus court costs.

{¶9} Wieser filed notices of appeal from these judgments, assigning the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**
**THE CONVICTION WAS BASED UPON INSUFFICIENT**
**EVIDENCE.**

**ASSIGNMENT OF ERROR NO. 2**
**THE CONVICTION IS AGAINST THE MANIFEST WEIGHT**
**OF THE EVIDENCE.**

**ASSIGNMENT OF ERROR NO. 3**
**THE DEFENDANT WAS DENIED DUE PROCESS AS SHE**
**WAS NOT TRIED BEFORE AN UNBIASED TRIBUNAL.**

{¶10} For ease of discussion, we elect to address the first two assignments of error together.

*First and Second Assignments of Error*

{¶11} In these assignments of error, Wieser only challenges her OVI conviction and does not assign any error pertaining to her failure to maintain control of her vehicle conviction. Specifically, Wieser argues her OVI conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. She contends that the prosecution failed to prove beyond a reasonable

doubt that Zolpidem (Ambien) is a "drug of abuse," and that her use of it impaired her driving.

*Standard of Review*

**{¶12}** Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id*. When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶13}** By contrast, in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins* at 387. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

*Relevant Law*

**{¶14}** Wieser was found guilty of OVI in violation of R.C. 4511.19(A)(1)(a), which provides that:

> **No person shall operate any vehicle * * * within this state, if, at the time of operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or combination of them.**

**{¶15}** At the outset we note that there is no dispute as to whether Wieser was operating a vehicle. Moreover, Wieser told Officer Sarchet that she was "on a sleeping pill," and the toxicology report admitted at trial verified that Zolpidem (Ambien) was found in her urine. On appeal, Wieser maintains that there was insufficient evidence to support her conviction because the prosecution failed to present testimony establishing that Zolpidem (Ambien) is a "drug of abuse" within the meaning of the statute.

**{¶16}** "The definition of 'drug of abuse' is imported from R.C. 4506.01." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, ¶ 14, citing R.C. 4511.18(E). The term "drug of abuse" means "*any controlled substance*, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of the judgment or reflexes." R.C. 4506.01(M)(emphasis added). "Controlled Substance" is defined in R.C. 3719.01(C) as "a drug, compound, mixture, preparation, or substance included in

-8-

schedule I, II, III, IV, or V." Section 3719.41 of the Revised Code lists Zolpidem as a "Schedule IV" substance. Therefore, Zolpidem (Ambien) is a controlled substance and, by extension, a "drug of abuse" under R.C. 4511.19.

{¶17} In our view, it would generally be the better practice for the prosecution to introduce testimony on each and every statutory element of the offense in any criminal case, including any statutory terms such as "drug of abuse," the definitions of which are necessary to establish those elements. Nevertheless, Weiser does not cite to any authority requiring the prosecution to present evidence that Zolpidem (Ambien) is a controlled substance in this instance. To the contrary, several appellate districts have held that the issue of whether a drug is a controlled substance is a question of law for the court, not a question of fact for the jury—at least for purposes of an OVI charge such as the one before us. *See State v. Murphy*, 10th Dist. Franklin Nos. 05AP-910, 05AP-911, 2006-Ohio-4341, ¶ 26 (finding the city presented sufficient evidence that the defendant had ingested a "drug of abuse" because both nordiazepam and temazepam are schedule IV drugs under R.C. 3719.41 and evidence was introduced that the defendant's urine contained both drugs); *see also State v. Peters*, 9th Dist. Wayne No. 08CA0009, 2008-Ohio-6940, ¶ 11 (concluding that sufficient evidence existed that the defendant operated a vehicle under the influence of a drug of abuse because "R.C. 3719.41 delineates the schedule drugs,

and classifies Methadone as a Schedule II controlled substance and Temazepam and Oxazepam as Schedule IV controlled substances. Accordingly, the substances for which Peters tested positively constitute drugs of abuse").

**{¶18}** Based on the aforementioned authority, we find Wieser's argument that there was insufficient evidence supporting her OVI conviction because the prosecution was required to present evidence establishing that Zolpidem (Ambien) is a "drug of abuse" to be without merit. With regard to the remaining portion of our analysis, the issue then becomes whether the greater amount of credible evidence offered at trial demonstrated Wieser's use of Zolpidem impaired her driving.

**{¶19}** At trial, Chief Redick, Officer Sarchet, and Sergeant Dyer, who together have multiple decades of experience in law enforcement, each testified to observing Wieser to be impaired during their interactions with her immediately after the accident. Specifically, Chief Redick testified that Wieser's eyes were "pinpoint" and her speech was slow and had a slur. Officer Sarchet described Wieser's speech as slurred and her movements as slow. And Sergeant Dyer testified that Wieser's pupils were slightly dilated, her neck and head movements were lethargic, and her speech was slow and slurred consistent with being "medicated."

{¶20} This testimony of three independent accounts indicating that Wieser displayed signs of impairment, coupled with the fact that Wieser had been involved in a significant single car accident, during which her vehicle went airborne and hit a tree and a stop sign, and the fact that she initially lied about another vehicle being involved all support a finding that Wieser was impaired at the time of accident. Moreover, a rational tier of fact could reasonably infer from Wieser's urine test immediately after the accident indicating the presence of Zolpidem (Ambien) in her system that her impairment was caused by that substance, which as a matter of law is deemed to be a "drug of abuse." *See State v. Richardson*, 150 Ohio St. 3d 554, 2016-Ohio-8448, ¶ 1 (concluding that the testimony of an experienced police officer that a defendant appears to be under the influence of a drug of abuse at the time of arrest, paired with additional evidence that the defendant had ingested a drug of abuse, constitutes sufficient evidence to support a conviction for operating a vehicle while under the influence of a drug of abuse).

{¶21} Based on the foregoing, we conclude that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found Wieser's impairment by a drug of abuse while driving her vehicle had been proven beyond a reasonable doubt so as to constitute sufficient evidence of the offense. Moreover, in our review of the record together with all of the reasonable

inferences, we cannot conclude that the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. As such, we do not find that Wieser's OVI conviction is against the manifest weight of the evidence. Accordingly, the first and second assignments of error are overruled.

*Third Assignment of Error*

**{¶22}** In her third assignment of error, Wieser argues that she was deprived of her Constitutionally protected right to a trial before an impartial, unprejudiced, and unbiased tribunal. Wieser alleges this claim based upon the trial court prematurely finding her guilty when her counsel moved for a Crim.R. 29 motion for acquittal after the prosecution rested its case.

*Relevant Law*

**{¶23}** A criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 34 (2002). Judicial bias has been described by the Supreme Court of Ohio as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus.

However, "[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, ¶ 5. (Citation omitted.)

{¶24} The record reveals that the trial court apologized for the untimely finding of guilt immediately after being notified of the procedural error, clarified that it was denying the Crim.R. 29 motion for acquittal, and permitted the defense to present its evidence. As previously mentioned, the defense declined to present evidence and renewed its Crim.R. 29 motion. Notably, at trial, Wieser did not request a mistrial or object to proceeding with the trial on the basis that the trial court was bias or prejudice because of the procedural error.

{¶25} While we acknowledge that the trial court erred when making a finding of guilt before the defense rested its case, there is no indication in the record that the defense had planned to present additional evidence, but instead intended to rest on the evidence presented by the prosecution. Therefore, to the extent that Wieser claims, "given the court's finding, presenting [her own] evidence would likely be a futile effort," such a contention is purely speculative. Rather, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated

favoritism or antagonism that would make fair judgment impossible." *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, ¶ 49, quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147 (1994).

**{¶26}** Here, the trial court made the premature finding of guilt after hearing all the evidence presented. Other than the mere occurrence of the procedural error, Wieser has not advanced any evidence of judicial bias. Accordingly, under these circumstances, we are unable to conclude that the trial court's mistake in this instance rose to the level of judicial bias or impaired the validity of Wieser's conviction. In other words, we do not find evidence in the record which overcomes the presumption that the trial court was not biased or prejudiced against Wieser or that establishes the trial court's error denied Wieser her right to due process. Therefore, the third assignment of error is overruled.

**{¶27}** For all these reasons, the assignments of error are overruled and the judgments are affirmed.

***Judgments Affirmed***

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**