[Cite as *State v. Simon*, 2021-Ohio-2738.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Craig R. Baldwin, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 21CA000003 |
| JEREMY C. SIMON | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |


CHARACTER OF PROCEEDING:     Criminal appeal from the Cambridge
                             Municipal Court, Case No. 20CRB00964


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      August 9, 2021

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

WILLIAM H. FERGUSON                     FREDERICK A. SEALOVER
Cambridge Law Director                  Box 2910
BY: MYRA SCHEURER                       Zanesville OH 43702
Assistant Law Director
150 Highland Avenue
Suite 2
Cambridge, OH 43725

*Gwin, J.,*

{¶1}  Defendant-appellant Jeremy C. Simon ["Jeremy"] appeals his conviction and sentence after a bench trial in the Cambridge Municipal Court, Guernsey County, Ohio.

*Facts and Procedural History*

{¶2}  Elizabeth K. Simon is the mother of Jeremy. The pair live in Mrs. Simon's home. On November 18, 2020 Mrs. Simon called her older son Rocky to come to her house to talk with his half-brother Jeremy because she and Jeremy had gotten into an argument. Rocky was at work so he called the Cambridge Police Department to request a well-being check. T. 17-18; 34. Mrs. Simon testified that, "I was at the bottom of the steps. He [Jeremy] came out of his room. There was a glass lamp about this high and he picked it up, and I knew he was going to throw it or smash it so I left. I knew that -- I could hear it breaking, but I didn't know where. And I left." T. at 17. On cross-examination, Mrs. Simon explained that from the top of the staircase one must go three steps to a landing, turn right, and, "probably a dozen steps after that," to get to the bottom. T. at 23.

{¶3}  The following day Sergeant Fred Wagner of the Cambridge Police Department responded to a dispatch at Mrs. Simon's home for a report that Jeremy was attempting to break down the door. T. at 30. Over defense counsel's objection, Sergeant Wagner testified that the previous day, Mrs. Simon had kicked Jeremy out of her house for stealing items from the home. T. at 31-33. Jeremy had been sending threatening phone messages to his mother. Id. Sergeant Warner testified that, "Mrs. Simon, advised me that the previous night Jeremy had gotten mad at her, thrown a lamp at her, and she had stated that if the lamp would have hit her, she -- it would have killed her." T. at 32.

{¶4}   At the conclusion of the evidence, Jeremy was found guilty of Domestic Violence. At a sentencing hearing, held immediately after the trial announced its verdict, Jeremy was sentenced to 180 days of local incarceration, with 175 of those days suspended and credit for the time that he had already served in the case. The trial court ordered Jeremy be placed on probation for 12 months with specific orders, and imposed court costs.

### Assignments of Error

{¶5}   Jeremy raises two Assignments of Error,

{¶6}   "I. THE TRIAL COURT ERRED BY PERMITTING THE ADMISSION OF CUMULATIVE AND HEARSAY EVIDENCE OVER THE DEFENDANT-APPELLANT'S OBJECTION AT TRIAL.

{¶7}   "II. THE TRIAL COURT ERRED BY FINDING THE DEFENDANT-APPELLANT GUILTY AT TRIAL AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCED PRESENTED.

### I.

{¶8}   In his First Assignment of Error, Jeremy contends that testimony by Sergeant Wagner concerning Mrs. Simon's statements to him the day following the incident were both cumulative and inadmissible as hearsay.

### Standard of Review

{¶9}   "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "However, we review de novo evidentiary rulings that implicate the

Confrontation Clause. *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶97.

**Issue for Appellate Review:** *Whether the trial court violated Jeremy's right to confrontation by allowing the state to introduce Mrs. Simon's statements made to Sergeant Wagner the day following the incident.*

{¶10} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

{¶11} In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)*,* the Supreme Court of the United States held that out-of-court statements that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court. The Court defined these "testimonial" statements to include "ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used "prosecutorially" and "extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 51-52.

{¶12} Thus, as to "testimonial evidence," "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."

541 U.S. at 68. "To trigger a violation of the Confrontation Clause, an admitted statement must be testimonial in nature, and must be hearsay." *United States v. Deitz,* 577 F.3d 672, 683 (6th Cir.2009). A statement is testimonial where a reasonable person would anticipate that his or her statement would be used "against the accused in investigating and prosecuting the crime." *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004). *See also State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at paragraph two of the syllabus.

{¶13} In the case at bar, *Crawford* does not apply because Mrs. Wagner testified and was subject to cross-examination concerning her statements to Sergeant Wagner. T. at 20-21. However, none of the other requirements of Evid. R. 801(D) concerning prior statements of a witness were met. The state contends that the hearsay statements that Mrs. Simon made to Sergeant Wagner were admissible as exited utterances pursuant to Evid. R. 803(2). However, that rule requires that the statement be made "while the declarant was under the stress of excitement caused by the event or condition." In the case at bar, Mrs. Simon returned to her home later in the evening and did not call the police. She did not speak to the police until the following day.

{¶14} Assuming arguendo the statements made by Mrs. Simon to Sergeant Wagner were inadmissible hearsay, Mrs. Simon herself testified during the trial that Jeremy threw a large lamp in her direction. Mrs. Simon testified that for a split second she was concerned for her safety. T. at 21. She further testified that if the lamp that Jeremy threw had hit her, "it would have done some damage..." T. at 28. Mrs. Simon testified that she left her home to avoid injury. Thus, even if we disregard the statements Mrs. Simon made to Sergeant Wagner, the disputed facts were admitted through Mrs. Simon's

testimony at trial. We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Conway*, 108 Ohio St.3d 214, 2006–Ohio–791, 842 N.E.2d 996, ¶ 78, *citing Chapman' State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated in part on other grounds Lytle v. Ohio, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978). See also, State v. Jones,* 135 Ohio St.3d 10, 2012–Ohio–5677, 984 N.E.2d 948, ¶ 177.

**{¶15}** Nor can it be said that the evidence of Mrs. Simon's statements to Sergeant Wagner was unfairly prejudicial to Jeremy. In *State v. Crotts,* the Ohio Supreme Court explained,

> As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult. Rather, only evidence that is unfairly prejudicial is excludable.
>
> "'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403.

Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.' " *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743 N.E.2d 890, *quoting Weissenberger's Ohio Evidence* (2000) 85–87, Section 403.3.

104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23-24. In the case at bar, Mrs. Simon had already testified to the substance of her statements to Sergeant Wagner. In *State v. Eubank*, the Ohio Supreme Court noted,

In examining the record to determine this issue, we may give weight to the fact that the error occurred in a trial to the court, rather than in a jury trial. *State v. White* (1968), 15 Ohio St.2d 146, 151, 239 N.E.2d 65; *State v. Austin* (1976), 52 Ohio App.2d 59, 70, 368 N.E.2d 59. Indeed, a judge is presumed to consider only the relevant, material and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record. *State v. White, supra*, 15 Ohio St.2d at page 151, 239 N.E.2d 65.

60 Ohio St.2d 183, 187, 398 N.E.2d 567(1979).

{¶16} We hold that there is no reasonable possibility that the testimony contributed to Jeremy's conviction. Jeremy has failed to establish the admission of Mrs. Simon's statements made to Sergeant Wagner unfairly prejudiced his substantial rights.

{¶17} Having examined the record herein, we conclude that any error in the admission of Mrs. Simon's statement to Sergeant Wagner was harmless beyond a reasonable doubt

{¶18} Jeremy's First Assignment of Error is overruled.

II.

{¶19} In his Second Assignment of Error, Jeremy contends that there is insufficient evidence to support his convictions and further his conviction was against the manifest weight of the evidence.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶20} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶21} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4,*

*684 N.E.2d 668 (1997; Walker*, at ¶30.  "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus.  *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19.  Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31.  We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'"  *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review:**   *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Jeremy's guilt on each element of the crime for which he was convicted beyond a reasonable doubt.*

{¶22}   To find Jeremy guilty of domestic violence the trier of fact would have to find beyond a reasonable doubt that he knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "Family or household member" includes, "a parent, a foster parent, or a child

of the offender, or another person related by consanguinity or affinity to the offender." R.C. 2919.25(F)(1)(a)(iii).

{¶23} Jeremy does not dispute that at all relevant times Mrs. Simon was his mother. Jeremy also agrees that he and his mother were living together at all relevant times.

{¶24} Mrs. Simon herself testified that Jeremy threw a large lamp in her direction, she was scared and it would have injured her if it had hit her. She left her home to avoid injury. T. 20-21; 28.

{¶25} Under R.C. 2923.02, the "attempt" statute,

(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense

\* \* \*

(B) It is no defense to a charge under this section that, in retrospect, commission of the offense that was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be.

(C) No person who is convicted of committing a specific offense, of complicity in the commission of an offense, or of conspiracy to commit an offense shall be convicted of an attempt to commit the same offense in violation of this section.

(D) It is an affirmative defense to a charge under this section that the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purpose.

{¶26} The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. *State v. Woods,* 48 Ohio St.2d 127, 357 N.E.2d 1059(1976), paragraph one of the syllabus, *overruled in part by State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140(1977). *See also, State v. Ashbrook*, 5th Dist. Stark No. 2004-CA-00109, 2005-Ohio-740, *reversed on other grounds and remanded for re-sentencing pursuant to State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856. *In re: Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109. In defining substantial step, the *Woods* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131-32, 357 N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal purpose." Id. at paragraph one of the syllabus. This test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent." *Woods, supra* at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted.

{¶27} R.C. 2923.02(D) provides that: "[i]t is an affirmative defense to a charge under this section that the actor abandoned his effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary

renunciation of his criminal purpose." However, the abandonment must be "complete" and "voluntary" in order to exculpate a defendant. Where one abandons an attempted crime because he fears detection or realizes that he cannot complete the crime, the "abandonment" is neither "complete" nor "voluntary." *Woods, supra*, 48 Ohio St.2d at 133.

{¶28} Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case. *State v. Group*, 98 Ohio St.3d 248, 262, 2002-Ohio-7247 at ¶100, 781 N.E.2d 980, 996 (2002). Neither factual nor legal impossibility is a defense to an attempt charge if the attempted offense could have been committed "had the attendant circumstances been as the actor believed them to be." R.C. 2923.02(B). The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. *State v. Garner*, 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634; *State v. Wallen*, 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 72 (5th. Dist. 1969).

{¶29} In the case at bar, Jeremy and his mother were arguing. Jeremy picked up a large lamp and threw it in the direction of his mother. Mrs. Simon admitted that she was scared "for a split second." T. at 21. Mrs. Simon further testified that the lamp would have injured her if it had hit her. T. at 28.

{¶30} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Jeremy attempted to cause physical harm to his mother. We hold, therefore, that the state met its burden of production regarding Domestic Violence and, accordingly, there

was sufficient evidence to support Jeremy's conviction.

**Standard of Appellate Review – Manifest Weight.**

{¶31} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶32} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to

decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20.  In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).  Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶33}  Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983).  Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."  Id.

**Issue for Appellate Review**:  *Whether the trier of fact clearly lost his way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶34}  The judge as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * *

such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶35} In the case at bar, the judge heard the witnesses and viewed the evidence. The judge saw Mrs. Simon subject to cross-examination. Thus, a rational basis exists in the record for the judge's decision.

{¶36} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Jeremy's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided the matters before him. The judge heard the witnesses, evaluated the evidence, and was convinced of Jeremy's guilt. The judge

neither lost his way nor created a miscarriage of justice in convicting Jeremy of Domestic Violence.

{¶37}   Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Jeremy was convicted.

{¶38}   Jeremy's Second Assignment of Error is overruled.

{¶39}   The judgment of the Cambridge Municipal Court, Guernsey County, Ohio is affirmed.


By Gwin, J.,

Baldwin, P.J., and

Delaney, J., concur